Good morning, Your Honors. Good morning, Your Honors. Clay Gatens on behalf of the appellant, Ms. Nancy Bess, I reserve three minutes for my rebuttal, if I may. Your Honors, when Ms. Bess's husband passed away, she became delinquent on her loan that was secured by a mortgage against her residence. As a result of this, the defendant, Ocwen Loan Servicing, forcibly entered her home and changed the locks on her home prior to commencing any foreclosure proceedings against Ms. Bess. Counsel, since we don't have a lot of time, can I just cut to the chase? We are, of course, aware of Jordan v. Nation Star Mortgage, which was decided by the Washington Supreme Court in 2016. That really changes the game insofar as this lawsuit is concerned, does it not? It absolutely does, Your Honor, and the district court at the time that it entered its orders of dismissal obviously didn't have the benefit of the Supreme Court's decision and clarification of the law in Washington State. Applying Jordan to this case takes a lot of us off the table. What is left to argue about in this case? Well, Your Honors, a very good point, and the answer is not much. The dismissals that the plaintiff is seeking reversal of are the dismissals for trespass and for the Consumer Protection Act violation, and as the defendant has conceded in their supplemental papers, the Jordan decision does require that the trespass claims be reversed and sent back down to the district court. That's a common law trespass claim, but that is also, their concession is to the common law trespass claim, but the same logic and the same basis. But the elements are different. On the statutory trespass, you have to prove that it was a wrongful entry. You wouldn't need to prove that for common law trespass. That is true that the one significant distinction between common law trespass and statutory trespass is an intentionality element. Now, what does it mean that you went into the wrong house? But what does intentional mean? So the statute, the statutory trespass statute is interesting in that it actually defines within itself that intent element, and it defines it as wrongfulness. And specifically, it holds that an act is wrongful for purposes of statutory trespass if the defendant unreasonably commits one or more acts that it knew or had reason to know that it lacked authorization to do. Is this going back to that earlier, was it 1850, whatever statute that the Supreme Court relied upon? The idea that whatever the case law might have been at the time, if they'd looked at this earlier statute, they would have known it was wrong? Is that what we're relying on here? That is true as part of it. So 7.28230 is the statute that I believe Your Honor is referring to. And the legal argument, of course, is that all actors in the state are presumed to know the law, and this law and the law that the Supreme Court enjoined. But apparently, neither the District Court nor the Washington Supreme Court were quite convinced that they knew the law, since they accepted it for certification. Should the parties have had that greater wisdom that the District Judge and Washington Supreme Court? Well, I couldn't opine as to this should have had greater wisdom. But what I can say is that the pleading stage, Ms. Bess, very consistently pled, and this is found at ER 81 as well as ER 35, that she, when she learned that her locks had been changed, she contacted the Ocwen, challenged the activity, and demanded that they remove their locks and restore her locks. So they certainly knew that they lacked authorization to act. And that was after they did the act. But they continued to maintain their locks, and they continued to use those locks to further enter her home. And those all constitute intentional statutory trespasses. But Counselor, what I'm struggling with, frankly, is that for all practical purposes, the law of the state of Washington has changed. They acted based upon what they understood the law of the state to be at the time. You may agree with it, you may not agree with it, but how can we say if the law was A, and they did A, and then it changed to B, that because they didn't know that it was going to become B, that they had intentionally violated A? Because the law didn't change. The Jordan decision merely clarified the long-held codified law. That's the 1869 statute. That's correct. Nobody knew about. That's, everyone knew about it. Ms. Bess certainly knew about it. Did you know about that before this case? But, but, what's that? Did you know about that law before this case? I did, Your Honor. You read it, you knew it, you had it in your mind. I was the attorney that brought the case against Nation Star. I was the attorney that brought the case. Oh, interesting. Okay, you knew about that statute then. I did, and I also know that after the Supreme Court's decision, Jordan, the defendant, Nation Star, in that case, moved for reconsideration, and as part of that, specifically asked the Washington State Supreme Court to rule whether or not that was a new pronouncement of law and should be held retroactive or not, and the Supreme Court denied that. So the Supreme Court considered whether it was new law, considered whether it should be modified retroactively, and effectively ruled that it always existed and is always applicable, and so, therefore, it was in place long before. Are there any penalties or sanctions under statutory trespass that differs from common law trespass, for example, punitive damages or anything along those lines? Yes, there is, Your Honor. Okay, so that's a difference between, in the final analysis, that'd be the difference between the two. You have more remedies. You have more remedies under statutory trespass. You have a ward of attorney's fees as well as tribal damages, Your Honor. Can I ask you about the unjust enrichment claim and what happens here to the unjust enrichment claim, because assuming the entry provisions contained in the deed of trust are unenforceable, does this pave the way for unjust enrichment to go forward? No, Your Honor. Plaintiffs concede the dismissal of the unjust enrichment claim and do not believe that the Jordan decision dictates a different analysis than that that was done by the district court judge, and that would be similar to the breach of contract claim as well as the claim for a deed of trust violation. So what's left then? So what is left is Ms. Bess's trespass claims that were always pled as well as her Consumer Protection Act violation claim. Is that the seventh claim or the seventh? It is. There were three Consumer Protection Act violation claims asserted. The first and the one that is subject of, from plaintiffs' perspective, reversal, is the claim based on the physical acts of changing the locks, which was always pled. The second was based on the violation of RCW 7.28230, which is the statute Your Honor was referring to that dates back to the 1800s. And the third basis for a CPA violation was premised upon the Deed of Trust Act. And so plaintiffs concede that the Deed of Trust Act basis for a violation of the CPA was properly dismissed and we're not seeking reversal of that. But the deed, but the Consumer Protection Act violation that's premised on the central salient fact of a lock change upon this property. So that's the same basis as a statutory trespass? That's correct. The same theory. So one way or the other, whichever way they go, you're going to get this, you will get the same result. Either we survive or they would both face an early death. Is that it? That's correct and that's consistent with the court's holding in Jordan. But it's also consistent with, subsequent to Jordan, two federal Washington State District Court judges have now applied the act of a lock change in the context of a Consumer Protection Act violation and held that that act is an unfair act under Washington's Consumer Protection Act. And that's Judge, Chief Judge Thomas Price from the Eastern District, who is the judge that survived. But on the theory that this is a per se violation, is it not a violation of a statute, is it a violation of the CPA? No, Your Honor. It is not a per se violation because there is no statute that says it's per se and the Washington State Supreme Court did not hold that it's per se. The violation is an unfair violation as both Judge Rice and now Judge Kuhnhauer have applied as it relates to the act of a lock change because, and as is shown by the in Clem v. Washington Mutual, an unfair act under the CPA can be demonstrated by the violation of a statute, which we have here under RCW 7128. I assume this in Washington operates like what we have in California. This Consumer Protection Act basically is an umbrella over specific violations elsewhere, right? That's correct. Okay. That's correct. That's correct, Your Honor. Do you want to save the rest of your time, counsel? I would, Your Honor. Okay, very good. Thank you. Let's hear from your opponent. By the way, counsel, if you'll tell me, how do you pronounce your clients, the OCWE and the Ocwen? Correct, Your Honor. It's Ocwen Loan Servicing. Okay. Good morning, Your Honors. Brian Forbes for Appley Ocwen Loan Servicing. I do want to address the Jordan case right from the start. I know it's, it is a new decision since the original briefing in this case. And while the Jordan decision we acknowledge does have an impact on the common law trespass claim, we don't think that it gives a new lease on life to the other claims. My brother counsel has already conceded that certain of the claims, the unjust enrichment claim, breach of contract, certain of the CPA claims, and other claims, consumer protection act claims, based on those, they still fall by the wayside. As to the statutory trespass claim, Your Honors, you're correct. The intent element is different under that than under the common law trespass. And under the rise code of Washington 4.24.630, it defines intentional, what's intent. And that is... But let's talk about, because I know the discussion here we've been having is, you know, even though Ocwen undertook the property preservation measures before the Jordan decision was issued, the statute, as has been noted, that renders the entry provisions unforceable, that's the 7.28230 of the Washington Code, right, has been on the books since the late 1800s. So at this stage of the litigation, we're looking at plausibility. So isn't it plausible that Ocwen was aware that its conduct was wrongful? And I'm also curious as to what you would assert that, what else best could have alleged to show wrongfulness at this early stage in the litigation? Your Honor, respectfully, we its decision, it had noted that the case raises unresolved questions of Washington state law. And, you know, acknowledging that Washington is a lien theory jurisdiction, the Washington legislature did not codify anything to suggest that these particular provisions of the deed of trust are unenforceable. In fact, the weight of authority, at least in other jurisdictions, supports the ability of the event of default. We cited to a number of cases. Again, those include some cases from lien theory jurisdictions like Oregon and to Wisconsin as well. So again, we don't think it was plausible in 2013 when the property preservation measures were taken, at least as alleged, that Ocwen could not have reasonably known that it did not have authorization to act to take the property preservation activities that it did. When there was a Supreme Court decision addressing a law that had not been defined some two years later. And your best case, I know you said you cited, what's your best case on that? Your Honor, again, I refer to the court to the other authority that we've cited in our briefs. I believe it's the Eagle case. Yes. I'm sorry. I don't have the citation. Okay. With respect to the Consumer Protection Act claims, and again, there were three separate Consumer Protection Act claims that were alleged. It sounds like Ms. Bess is conceding at least two of the claims. One's based on the deed of trust and one's based on the deed of trust. The other one that I would need to talk about is the stand-alone that's alleged in the, I think it's in the seventh cause of action. It looks like you argue that in your supplemental brief that Ms. Bess hasn't met the first element requiring the, I think, unfair or deceptive act or practice. But my question, does the conduct here have the capacity to deceive a substantial portion of the public? Your Honor, we don't believe so. Again, in light of the allegations here where the activity occurred in 2013 when Ms. Bess was in default, the deed of trust at the time expressly indicated that property preservation activities could take place in the event of default. We believe that that does not satisfy the element of deceit. We also note that with respect to the CPA claim... But she pleads that this case is a class action and the entry provisions authorizing Ocwen's entry appeared to be, you know, form language implying that other members of the public may have been affected. So... Your Honor, they plead sufficient facts, especially Judge Settle-Twice had considered their Consumer Protection Act claims and determined that there were not sufficient facts to support each of the elements of the Consumer Protection Act claim. They had a third opportunity to replead and chose not to replead. We think that there have been sufficient attempts to do that. I also want to point out that we also contend that there is not substantial injury alleged in connection with the complaint as well. While, you know, again, Ms. Bess admits that she was in default and was in the process of moving out, there's some allegations about fees that were charged or assessed, but there's no allegations that any fees were actually paid. There's also some... It's in the possession itself where the damage has occurred. That is, she was deprived of the property for X period of time. Isn't that the damages here? Well, Your Honor, that may be among damages that they are arguing. We would contend that, again, the allegations of this complaint is that she was in the process of moving out. She does not otherwise indicate that she intended to... It wouldn't matter whether she was moving out or not. If she had the right to possession and was deprived of that right, that would constitute damages, would it not? The other matter will go to how much damages she may have, but the fact of damages have been pled. Again, respectfully, Your Honor, we think that it is limited in terms of what has been pled in terms of actual damages. The indications are that she had given up or was giving up the right of possession. She abandoned it? Certainly, there's the allegation that she was in the process of moving out. I would not say that she has alleged that she has abandoned the property. Well, Supreme Court obviously is, I think, saying you can't have a foreclosure before you foreclose. In effect, you have the result of a foreclosure by taking possession of the property. What has the Supreme Court said, if anything, about what a lender does in the event that there's waste is occurring on the property? For example, you've got some squatters there, or you've got people who are coming in and breaking in. Does the lender have any remedy post-Jordan? I would say, Your Honor, that the Jordan case does suggest other avenues that the lender can undertake to deal with waste, to deal with squatters. But there was process not acting individually, right? There's a process that they, right. And again, prior to the Jordan decision in 2016, the process that was common was, one, was the use of the deed of trust provision. Is it fair to say that the district court here, indeed almost any court prior to the Jordan decision, would have understood that the law of Washington was different, insofar as the ability to take possession of the property in the way that you did here? Yeah, I would agree that prior to the Jordan decision, the law was, there was no controlling authority that said the deed of trust provisions were unenforceable in light of other Washington law. Or any other law, even of a trial court, for example, that suggested to the contrary. In other words, was this at all controversial before? I don't believe it was. I don't believe the plaintiffs have, or Ms. Bessett, cited to decisions prior in Washington. Certainly not controlling authority, certainly not the Washington Supreme Court. Was this a surprise to the state lending institutions? In other words, lenders in Washington? I, I, I, without, yeah, without speculating as to, I, I suppose it was, Your Honor. If the, we're at the motion to dismiss stage. If the plaintiffs have properly alleged wrongfulness, shouldn't they be allowed to take discovery on this issue? And then in summary judgment, you come back here and you, and, and you make this argument with, and on a full record. Your Honor, I, I think that the difference between our case and the other cases that have gone forward, as my brother counsel has mentioned, those were cases that were some of these decisions did come up at summary judgment. For example, in the Bund case, which was cited as supplemental authority, I don't believe that there was a motion to dismiss in the operative complaint relative to certain of these claims. We're raising it now, just as we raised it before, because we don't think that there are plausible, there's a plausible inference that my client had the, the sufficient intent as required by Washington law. And I see that my time is up. I have indeed. Thank you, counsel, for your argument. Thank you. Any, any other questions from my colleague? No, okay. We'll have rebuttal then. Thank you, Your Honors. Briefly, I'm going to give Your Honors my best cases as they relate to the intent element. And those cases are Howard v. Edgren, which is 385P2D41, which was decided, decided in 1963. And Western Lone v. Edgren, which is 385P2D41. Both of those cases interpret and apply RCW 7.28230 to a lender taking possession of a borrower's property prior to foreclosure. And so I would further submit that in addition to that statute existing since the 1800s, there was Supreme Court and appellate court law in Washington state that directly applied those to the exact context that we're addressing here. So Jordan, in effect, from your perspective, simply applied what was already the law? Absolutely, Your Honor. And then also to Your Honor's question regarding the deception or deceptive element of the CPA, I want to give you my best case for that, which is Penong v. Farmer's Insurance, which is 204P3R885. And in Penong, the Supreme Court of Washington state held that deception exists if representations or omissions or practices that are likely to mislead a reasonable consumer occur. Here, the practice is changing a lock on a borrower's home prior to foreclosure, which reasonably leads them to believe they no longer have the right to possess the property. Okay. Other questions? Thanks to both counsel. Your arguments are helpful to us. We appreciate it. The case just argued is submitted.
judges: M. Smith, Murguia, Robreno